IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHENZHEN PEISHI ADVERTISING MEDIA CO., LTD,<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A" HERETO,<br><br>Defendants. | Case No. 1:26-cv-00090-TMD-HKM<br><br><br>Honorable Thomas M. Durkin<br><br>Magistrate Heather K. McShain |

**PLAINTIFF'S *EX PARTE* MOTION FOR TEMORARY RESTRAINING ORDER, INCLUDING ASSET RESTRAINT**

Plaintiff Shenzhen Peishi Advertising Media Co., Ltd ("Plaintiff"), by and through undersigned counsel, pursuant to Rule 65 of the Federal Rules of Civil Procedure, 17 U.S.C. § 502 and 15 U.S.C. §1116, moves on an *ex parte* basis for an temporary restraining order against the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations identified on Schedule "A" to the Complaint (collectively, the "Defendants"), which (1) restrains Defendants from the unlawful making, offering for sale, selling, and/or importing into the United States any product that infringes U.S. Patent No. 12,324,440 (the "'440 Patent"); and (2) restrains the Defendants' assets associated with their unlawful exploitation of the '440 Patent.

Plaintiff's Motion is made and based on the pleadings on file in this action, this Motion, the Declaration of Anisah Beaston (the "Beaston Decl."), and the Declaration of Xiaoling Chen (the "Chen Decl.") filed concurrently herewith, together with any arguments of counsel entertained by the Court.

1

I.  **INTRODUCTION**

Plaintiff initiated this action to stop Defendants' unfair methods of competition and enforce its patent rights associated with U.S. Patent No. 12,324,440 (the "'440 Patent"). Plaintiff is the lawful assignee and owner of all rights, titles, and interests in and to the '440 Patent entitled "Automatic Smoker" that issued on June 10, 2025. [Chen Decl. ¶ 4; Dkt 1 ¶¶ 11-15]. As alleged in the Complaint, each of the Defendants have promoted, marketed, offered for sale, sold and/or imported into the United States automatic smoker products that violate Plaintiff's rights to the '440 Patent (the "Infringing Products"), through their e-commerce stores (the "Online Stores") maintained on the Amazon marketplace platform (the "Online Platform"). Without the injunctive relief requested herein, the Defendants will continue to irreparably harm Plaintiff and the public.

Plaintiff has built a reputation for high-quality, safe, and elegant automatic electronic cocktail smokers. Defendants' unauthorized use of the '440 Patent deprives Plaintiff of all quality control and allows the sale of products that mislead consumers into believing they are affiliated with, or equivalent to, Plaintiff's smokers. This loss of control, reputational harm, and consumer confusion are classic forms of irreparable harm not compensable by money damages.

Plaintiff's evidence of the Defendants' unauthorized use of the '440 Patent is strong, and Plaintiff is likely to succeed on the merits of its claims for patent infringement. Further, the balance of harms and public interest both favor injunctive relief. Without an injunction, Plaintiff's hard-earned reputation and goodwill will continue to be harmed, and Plaintiff will continue to lose market share to these infringers. Moreover, the public has a strong interest in enforcing intellectual property laws to prevent infringers from profiting off others' rights. Given that Plaintiff is very

likely to succeed on the merits of its case, the only harm the injunction will cause the Defendants will be that they can no longer profit from using, without authorization, the '440 Patent.

## II. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing irreparable harm that will persist absent Court intervention. Plaintiff therefore requests this Court issue a temporary restraining order requiring removal of the Infringing Products and freezing Defendants' related assets. Without such relief, the infringement will continue to harm Plaintiff and the public.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). Defendants unlawfully promote, advertise, offer to sell, and sell the Infringing Products via the Online Stores. [Dkt. No. 1-3; Beaston Decl. ¶¶ 3-5]. The entry of a temporary restraining order is necessary and appropriate because it will preserve the status quo, including critical evidence and funds, until such time as a hearing can be held. Such relief is appropriate in this case. *See, e.g., Imagination Prod. Corp.*, 2021 WL 8314468, at *1 (J. Wood) (extending TRO and granting preliminary injunction freezing online stores' accounts in utility patent infringement case); *see also Spectrum Brands, Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Assocs. Identified in Schedule A*, No. 1:24-CV-04849, 2024 WL 4449945, at *1 (N.D. Ill. Oct. 9, 2024) (granting prejudgment asset restraint against dozens of non-appearing defendant stores in utility patent infringement case); *E-Link Tech. Co. v. Shenzhen Uni-Sun Elecs. Co.,* No. 20 C 00247, 2020 WL 3643056, at *2 (N.D. Ill. July 6,

2020) (denying the defendant's motion to reconsider preliminary injunction and asset restraint in utility patent infringement case).

If the Defendants are given notice of the instant lawsuit without a temporary injunction in place, Defendants can and likely will take action to avoid the jurisdiction and judgment of this Court. Defendants likely will: (i) adopt new online store aliases; (ii) create new e-commerce stores on the Platform; (iii) transfer inventory that is the subject of the lawsuit; and (iv) move assets from U.S.-based bank accounts to offshore accounts. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. See, e.g., *Chrome Cherry Limited v. Partnerships, and Unincorporated Associations Identified on Schedule A,* No. 21-CV-05491, 2021 WL 6752296, at *2 (N.D. Ill. Oct. 20, 2021) (stating that in patent infringement cases, "should Defendants be informed of this proceeding before a temporary restraining order could issue, Defendants will likely register new e-commerce stores under new aliases and move assets to offshore bank accounts outside the jurisdiction of the Court"); *Square One Entertainment Inc. v. The Partnerships and Unincorporated Associations Identified in Schedule "A", Defendants*., No. 20 C 5685, 2021 WL 1253450, at *1 (N.D. Ill. Apr. 5, 2021) (Durkin, J.) ("[D]istrict courts often agree, that it is necessary to restrain the defendants' assets without notice in order to prevent them from removing their assets from the United States or otherwise hiding them."); *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully request that this Court issue the requested *ex parte* temporary restraining order.

A. **This Court May Exercise Personal Jurisdiction over Each Defendant**

This Court may properly exercise personal jurisdiction over each Defendant because they directly target business activities toward consumers in the United States, including Illinois, by directly offering for sale products into this Judicial District through their fully interactive, Online Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial and interactive e-commerce stores through which Illinois residents can purchase the Infringing Products. [Dkt. 1 ¶¶ 2, 31, 37; Beaston Decl. ¶¶ 3-4] Each Defendant has targeted sales from Illinois residents by operating the Online Stores that offer shipping to the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell the Infringing Products to consumers within the United States, including the State of Illinois. *Id.*

The Northern District regularly exercises personal jurisdiction over websites that practice claims of registered patents without authorization in connection with the offering for sale and selling of infringing merchandise to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2); *See, e.g., Oakley, Inc. v. Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 20-CV-06676, 2020 WL 9455191 (N.D. Ill. Dec. 11, 2020) (finding "personal jurisdiction over the Defendants since the Defendants directly target their business activities toward consumers in the United States, including Illinois . . . [s]pecifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and have sold products that infringe directly and/or indirectly [Plaintiff's] United States design patents."); *see also Monster Energy Company v. Wensheng*, 136 F.Supp.3d 897, 902-909 (N.D. Ill. 2015); *Square One Entertainment*, 2021 WL

1253450, at *1; *ZURU (Singapore) Pte., Ltd et al v The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified on Schedule A Hereto*, No.: 1-21-CV-02180, Document # 14, (N.D. Ill. April 27, 2021) (granting orders requested herein in a similar case involving BUNCH O BALLOONS copyrighted works and trademark); *NBA Properties, Incorporated, et al. v. Hanwjh*, No. 21-2909, 2022 WL 3367823, at *7 (7th Cir. 2022) (finding personal jurisdiction over a defendant when it "established an online store, using a third-party retailer, Amazon.com" and that "[t]hrough this online store, [the defendant] unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so . . . [w]hen an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address.").

**B.     Standards for Temporary Restraining Order**

Section 283 of the Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g., USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019) (citing cases). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). If these three conditions are met, the Court must then consider and balance the harm to the nonmovant if relief is granted against the irreparable harm to the movant if relief is denied *Id.*

Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.*

The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the court has deemed "the sliding scale approach"—the more likely the Plaintiff will succeed on the merits, the less the balance of harms need favor the Plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need to be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

> i. ***Plaintiff enjoys a high likelihood of success on the merits of its claims.***

Federal Circuit law applies to the substantive matter of patent infringement, namely, the "likelihood of success on the merits" factor.[1] Here, Plaintiff will likely succeed on its patent infringement claim because Defendants' Infringing Products contain each and every claim limitation of one or more claims of the '440 Patent. Plaintiff is the lawful owner of all rights, titles, and interests in and to the '440 Patent for an "Automatic smoker." [Chen Decl., ¶ 4]; *see also*

---

[1] Although the law of the regional circuits is appropriately applied for the other preliminary injunction factors, courts in the jurisdiction have recognized that the law of the Federal Circuit Court of Appeals governs the likelihood of success factor in patent infringement cases. *Aevoe Corp. v. AE Tech. Co.,* 727 F.3d 1375, 1381 (Fed. Cir. 2013) ("This Court applies its 'own law and not the law of the regional circuit to issues concerning our jurisdiction.'")(citing *Ultra-Precision Mfg. Ltd. v. Ford Motor Co.,* 338 F.3d 1353, 1356 (Fed. Cir. 2003)).

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1328 (Fed. Cir. 2015) (recognizing that utility patents enjoy a "presumption of validity").

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Plaintiff has submitted documentation clearly showing that Defendants use, offer for sale, sell, and/or import into the United States products that literally infringe one or more claims of the '440 Patent ("Infringing Products"). [Dkt 1. ¶¶ 19-21, 30-50].

The determination of patent infringement is a two-step process: "[t]he court must first construe the asserted claims and then compare the properly construed claims to the allegedly infringing devices." *Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1335 (Fed. Cir. 2005) (citation omitted). In comparing the claims to an accused product, a patentee must prove that "the accused device contains each limitation of the asserted claim, or an equivalent of each limitation." *Applied Medical Resources Corp. v. Tyco Healthcare Group LP*, 534 Fed. Appx. 972, 976 (Fed. Cir. 2013). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-80 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis . . . [u]sually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005). "[T]he words of a claim are generally given their ordinary and customary meaning." *Id.* at 1312-13.

Here, all Defendants sell the Infringing Products. [Dkt 1¶¶ 17-20, 30-50; Beaston Decl. ¶¶ 3-4]. Applying the ordinary and customary meaning of the claim terms, the Infringing Products

falls within the scope of at least Claim 1 of the '440 Patent. Because Defendants' Infringing Products contain every claim limitation of at least one claim, it literally infringes the '440 Patent. [Dkt 1¶ 41]. Plaintiff has not licensed or authorized Defendants to use the Patent. [Chen Decl. ¶ 8]. Accordingly, Plaintiff is likely to establish a *prima facie* case of patent infringement.

> ii. **Plaintiff has No Adequate Remedy at Law and Would Suffer Irreparable Harm Absent of Injunctive Relief.**

Irreparable harm resulting from patent infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). At this stage, Plaintiff only needs to show that irreparable harm is likely. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Here, Plaintiff suffers three primary forms of irreparable harm: (1) loss of market share, (2) the loss of market exclusivity for its patent, and (3) loss of consumer and licensee goodwill. The sheer number of infringing stores demonstrates the loss of market share by Plaintiff and the loss of exclusivity. [Dkt. No. 1-3]. Because Defendants sell products lacking Plaintiff's quality controls, Plaintiff has suffered a loss of goodwill and diminished association between the Automatic Smoker and Plaintiff's high-quality standards.

Courts have found TROs appropriate in these circumstances. *See Sioux Steel Co. v. Prairie Land Mill Wright Servs.*, No. 16-CV-2212, 2023 WL 5804194, at *2 (N.D. Ill. Sept. 7, 2023) (citing *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 793 (Fed. Cir. 2019) (stating that "direct competition with the infringer can support a finding of irreparable harm"); *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("Price erosion, loss of goodwill,

damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.'")); *see also Otter Prods. V. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (explaining that absent the requested TRO, plaintiff were likely to suffer "irreparable injury . . .in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit" the plaintiff's trademarks and patents").

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *See Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Without the patented invention, Defendants' Infringing Products would be a drinking glass lid. Defendants' infringing use of the '440 Patent invention is a substantial, if not the exclusive, reason for consumer demand of the Infringing Product. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Finally, because Defendants are individuals and businesses who nearly all reside in the People's Republic of China, any monetary judgment from these Defendants is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"); *see also Aevoe Corp. v. AE Tech*

*Co., Ltd.*, No. 2:12- cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm").

For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). *See also* Chen Decl. ¶¶ 11-15.

### iii. The Balance of Equities Weighs Strongly in Plaintiff's Favor.

"As willful infringers, Defendants are entitled to little equitable consideration." *Bulgari, S.p.A. v. Partnerships & Unincorporated Associations Identified On Schedule "A,"*, No. 14-cv-4819, 2014 WL 3749132, at *6 (N.D. Ill. July 18, 2014). This is because any harm to Defendants that could possibly result from a TRO is self-inflicted. Defendants took a calculated risk when they engaged in patent infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *E- Link Technology Co., Ltd. v. Shenzen Uni-Sun Electronics Co., Ltd.*, No. 20 C 00247, 2020 WL 3643056, at *2 (N.D. Ill. July 6, 2020) (denying defendants' motion to vacate the preliminary injunction order in patent infringement case, and citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); *see also Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) (finding that "the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of

Celsis' patent"). Furthermore, absent the TRO, Defendants will continue to infringe, causing continuing irreparable harm to Plaintiff.

### iv. Issuance of Injunctive Relief is in the Public Interest.

"[T]he public interest is not served by 'cheap copies of patented inventions [that] have the effect of inhibiting innovation and incentive.'" *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013).

Here, unless Defendants' unauthorized use of the '440 Patent is enjoined, the public will continue to be injured by Defendants' conduct because they are not getting the authentic, quality product they thought they purchased. For these reasons, equity requires that Defendants be ordered to cease their unlawful conduct, as the protection of intellectual property is in the public interest. *PPG Indus. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996) ("[T]he Court does acknowledge that there is a "strong public policy favoring the enforcement of patent rights").

### C. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Patent is Appropriate

The Patent Act authorized courts to issue injunctive relief "in accordance with the principles of equity to prevent the violations of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

Additionally, Rule 65(b) of the Federal Rules of Civil Procedure also provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active

concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

Plaintiff request a temporary injunction requiring the Defendants to immediately cease all making, using, offering for sale, selling, and importing the Infringing Product and any products that infringe the claims of the '440 Patent. Such relief is necessary to stop the ongoing harm to Plaintiff, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the '440 Patent.

The need for *ex parte* relief is magnified in the global economy where infringers can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and exact addresses of the Defendants, as well as other Defendant Internet Stores used to distribute Infringing Products.

Many courts in this District, including this Court, have authorized immediate injunctive relief in similar cases involving the unauthorized use of intellectual property rights. *See, e.g., Imagination Prod. Corp. v. Does 1-6*, No. 21-CV-02683, 2021 WL 8314468, at *1 (N.D. Ill. Sept. 7, 2021) (granting temporary restraining order then preliminary injunction in utility patent infringement case); *Chrome Cherry*, 2021 WL 6752296 (N.D. Ill. Oct. 20, 2021) (granting ex-parte temporary restraining order and electronic service of process against Chinese defendants in patent infringement case); *ZURU*, No.: 1-21-CV-02180, Document # 14 (granting orders requested herein in a similar case involving Plaintiffs' BUNCH O BALLOONS copyright works and trademark). Such relief is appropriate here for the reasons discussed above.

> **D.** **<u>Preventing the Fraudulent Transfer and Dissipation of Assets is Appropriate.</u>**

Plaintiff requests an *ex parte* restraint of Defendants' assets to preserve the status quo and Plaintiff's right to its requested equitable relief, which include a constructive trust, unjust

enrichment, a reasonably royalty based on Defendants' profits, attorneys' fees, costs and prejudgment interest. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered in a preliminary injunction. *See, e.g., Chrome Cherry Ltd. v. Partnerships, and Unincorporated Associations Identified on Schedule A.*, No. 21-CV-05491, 2021 WL 6752296, at*2 (N.D. Ill. Oct. 20, 2021) (stating that in patent infringement cases, "should Defendants be informed of this proceeding before a temporary restraining order could issue, Defendants will likely register new e-commerce stores under new aliases and move assets to offshore bank accounts outside the jurisdiction of the Court")). Based on the fact that each of the Defendants operate in and from China, and own primary financial accounts in China such a transfer is likely. Dkt. 1 ¶ 29.

Courts have the inherent authority to issue a prejudgment asset restraint when a complaint seeks equitable relief. *See CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("[S]ince the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the Plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *Cengage Learning, Inc. v. Doe 1*, 2018 WL 2244461, at *3 (S.D.N.Y. Jan. 17, 2018) ("[W]here Plaintiff seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets") (internal quotations and citations omitted); *Chrome Cherry*, 2021 WL 6752296, at *2 (asset restraint warranted in patent infringement case). Plaintiff in this case seeks equitable relief, including unjust enrichment, prejudgment interest, costs, and a reasonable royalty based on the infringer's profits. *See Movitz v. First Nat. Bank of Chicago*, 982 F. Supp. 566, 569 (N.D. Ill. 1997) (citing *In re Marriage of Blinderman*, 283 Ill.App.3d 26, 218 Ill.Dec. 544, 550, 669 N.E.2d 687, 693 (1996) (stating that "the court can grant prejudgment

interest if it is warranted by equitable considerations"); *Hall v. Cole*, 412 U.S. 1, 4–5 (1973) (stating that "federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require"); *Zegers v. Zegers, Inc.,* 458 F.2d 726, 728 (7th Cir. 1972) (finding that the infringer's profits may constitute evidence tending to show the plaintiff's damages or be a relevant factor in the calculation of a reasonable royalty). Thus, the Court has the authority to freeze Defendants' assets. *See Imagination Prod.*, 2021 WL 8314468, at *1 (granting preliminary injunction freezing online stores' accounts in utility patent infringement case).

In addition, as detailed in Section III(B)(1) *supra*, Plaintiff has shown a strong likelihood of succeeding on the merits of its patent infringement claim. Under 35 U.S.C. § 284, the Court may award Plaintiff damages adequate to compensate for the infringement, in an amount no less than a reasonable royalty for use made of the invention by the infringer, together with interest and costs. Plaintiff's Complaint describes the loss of licensing revenue resulting from Defendant's infringement and seeks, among other relief, injunctive relief and monetary relief. (Dkt No. 1 ¶9). Therefore, this Court has authority to and should grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm, and a substantial risk that Defendants will dissipate assets by transferring their illicit proceeds offshore. An injunction freezing Defendants' assets is therefore warranted.

**E.     A Minimal Bond Should be Required for Issuance of the TRO.**

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. V. Tanenhaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of patent infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than

fourteen thousand U.S. dollars ($14,000.00) representing $1,000.00 for each named Schedule A Defendant to adequately protect Plaintiff's business until the district court enters its final decision. *See e.g., Deckers Outdoor Corporation v. The Partnerships et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015 (unpublished ($10,000 bond).

### III.  <u>CONCLUSION</u>

Defendants' operations are irreparably harming Plaintiff's business, its licensing market for its patent, and consumers. Without entry of the requested relief, Defendants' infringement of the '440 Patent in connection with the making, using, offering to sell, selling, and importing of the Infringing Products will continue to immediately and irreparably harm Plaintiff. Therefore, entry of an *ex parte* order is necessary and appropriate. In view of the foregoing, Plaintiff request that this Court enter a Temporary Restraining Order.

Dated: January 16, 2026                                         Respectfully Submitted,

By: */s/ William R. Brees*
William R. Brees (Bar No. 98886)
william@bayramoglu-legal.com
**BAYRAMOGLU LAW OFFICES LLC**
233 S. Wacker Drive, 44th Floor, #57
Chicago, IL 60606
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of January 2026, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

By: */s/ William R. Brees*
William R. Brees (Bar No. 98886)
william@bayramoglu-legal.com
**BAYRAMOGLU LAW OFFICES LLC**
233 S. Wacker Drive, 44th Floor, #57
Chicago, IL 60606
Tel: (702) 462-5973 | Fax: (702) 553-3404
*Attorney for Plaintiff*